Cutts *v.* King.

## Cutts *vs.* King.

By the use of the term "*about*," in describing the length of line in a deed of conveyance, it is understood that exact precision was not intended ; but if the place where the monument stood, by which the distance was controlled and determined, cannot be ascertained, the grantee must be limited to the number of rods or feet given.

If one tenant in common sues a writ of entry against his co-tenant, who pleads *nul disseisin* ; proof of the demandant's title as tenant in common will not now entitle him to judgment ; the *Stat.* 1826. *ch.* 344. having rendered it necessary that he should also prove an actual ouster.

Since the passage of *Stat.* 1826. *ch.* 344, a verdict and judgment in favor of the tenant, upon the general issue, in a writ of entry, will not always be evidence of title in him ; for the statute having declared that such plea shall not be taken as an admission of the tenant's seisin and possession of the land, it may be that he prevailed because he was not proved to be in possession.

THIS was a writ of entry by one tenant in common, against his co-tenant, for the moiety of an undivided half part of a tract of land

Cutts *v.* King.

in *Saco ;* counting on his own seisin within twenty years, and a disseisin by the tenant ; who pleaded the general issue, which was joined.   A second plea was also pleaded by the tenant,—that before the commencement of the action, viz. *July* 5, 1825, the demandant, by his deed of bargain and sale, conveyed the whole of the demanded premises to one *Jonathan Tucker.*   To this the demandant replied that at the time of the conveyance he was disseised by the tenant, and nothing passed by the deed.   The tenant rejoined, taking issue on the fact of disseisin as alleged in the replication, which was joined by the demandant.

The demandant, to prove the issue on his part, read in evidence a deed from *David Sewall,* as agent for the Commonwealth of Massachusetts, dated *March* 12, 1801, conveying to him one eighth part of a double saw-mill in *Saco,* with the like proportion of the stream, falls and privileges thereto belonging, late the property of Sir *William Pepperell.* He also produced a deed from *Thomas Cutts,* dated *July* 4, 1816, conveying to him three eighth parts of the same estate. And it was admitted that the demanded premises were part of the *Pepperell*-mill-privilege, so called.

To prove the disseisin as alleged in the writ, the demandant showed a deed of quitclaim from *George Tucker* to the tenant, dated *Nov.* 4, 1818 ; and proved that in *January* 1828, before the commencement of this suit, he called on the tenant, and inquired if he held the demanded premises as a proprietor of the mill-privilege, or adverse thereto?  To which the tenant replied—" if you have rights there, enjoy them."   And on the demandant's saying that he had such rights, which he wished to enjoy, and inquiring if the tenant was willing that he should ; the tenant replied as before.   The demandant also proved that a small piece of stone fence, about ten feet in length, on the line of the demanded premises and the public highway, had been erected by men in the tenant's employment, from rocks taken from the highway.

The tenant, on his part, read a deed from *David Sewall,* agent as aforesaid, dated *June* 14, 1800, conveying to *Nancy Ayer* a part of the estate formerly of Sir *William Pepperell,* being a moiety of a small lot in *Saco,* " bounded twenty-four feet on the post road leading

to *Scarborough,* and to extend back northwesterly from said road about thirty feet, where an old small dwelling house now stands, improved or occupied by *Peter Page,*" &c., being part of the *Pepperell-*mill-privilege. He also read a deed from *Nancy Ayer,* dated *March* 26, 1803, conveying the same lot to *George Tucker,* " together with an old house standing on the premises, lately occupied by *Peter Page,* and now in the possession of said *George,* and used by him as a saddler's shop ;"—and deduced the title to the same land from said *George,* through *James D. Tucker,* to himself, by deed dated *Nov.* 24, 1818. The title of the tenant to the land described in these deeds was not controverted. He also produced a deed from *Samuel Hartley,* as guardian of certain children of *Daniel Cleaves,* dated *June* 28, 1819, conveying to him certain other specified undivided portions of the *Pepperell-*mill-site and privilege ; by which it was admitted that he became a tenant in common with the demandant of the premises therein described ; but the proportion was not admitted. He further proved that at the time of the commencement of this action, he had a store covering the lot described in the deed of *James D. Tucker* to himself, and extending back from the street thirty four feet and a half ; and being in width twenty-five feet and nine inches ;—that the cellar wall, upon which the store then rested, was laid about the first of *July* 1804 ; and that the store was immediately erected thereon, and had ever since continued in the occupancy of him and his grantors. In the deed from *George* to *James D. Tucker,* and from him to the tenant, no mention is made of the house of *Peter Page ;* but the lot is conveyed " with the building thereon standing."

Upon these facts a verdict was returned by consent for the demandant, subject to the opinion of the court upon his right to recover the whole or any part of the demanded premises ; the parties agreeing that the court might infer, from the facts reported, whatever the jury might properly infer from the same facts ; and that a general verdict might be entered for the tenant, if he was entitled to prevail.

*J.* and *E. Shepley,* for the tenant, maintained his title to the portion covered by the store, by his deeds, and by exclusive possession for more than twenty years. The store, they contended, must be

taken to have been erected on the site of *Page's* house, which, as a monument, controlled the distance given in the deed. *Purinton v. Sedgley*, 4 *Greenl.* 291.

His becoming a tenant in common in the mill-privilege within that time, did not change his rights. He is not estopped, because he gave no deed; for it is the grantor, and not the grantee, against whom this principle is admitted to operate. *Blight's lesse v. Rochester*, 7 *Wheat.* 547. *Fox v. Widgery*, 4 *Greenl.* 218.

As to the portion not covered by the store, they insisted that the demandant could not recover, because he held in common with the tenant, who never had ousted him. The deed from *George Tucker* to the tenant was no ouster, it being but a naked release, without covenants, and not to one in the actual, exclusive and adverse possession, which was necessary to constitute a disseisin. *Porter v. Perkins*, 5 *Mass.* 233. *Warren v. Child*, 11 *Mass.* 222. *Mayo v. Libby*, 12 *Mass.* 343. *Little v. Megquier* 2 *Greenl.* 176. *Kennebec Proprietors v. Laboree, ib.* 286. *Robison v. Swett*, 3 *Greenl.* 316. *Brimmer v. Proprietors of Long Wharf*, 5. *Pick.* 135. Without proof of such disseisin, since the statute of 1826, *ch.* 344. no demandant in a writ of entry can recover.

*J. Holmes*, for the demandant, argued that since the *Stat.* 1826, *ch.* 344, a tenant in common cannot defend, as such, against his co-tenant, under the plea of *nul disseisin*, but must specially plead his tenancy. Otherwise, if he can defeat the demandant, by showing his tenancy in common under that issue, which goes to the whole title, he will obtain all the land, by proving title to a moiety. For if judgment, upon that plea, since the statute, is not conclusive upon the title, as it was before, then the tenant may be harrassed with endless suits, of the same nature, for the same land. *Outram v. Morewood*, 3 *East*, 346.

But here was proof of an actual ouster, in the acceptance of a deed of the whole, from *George Tucker*. Such a deed, from a mere stranger, to one tenant in common, his co-tenant may treat as an ouster. *Higby v. Rice*, 5 *Mass.* 352. If proof of his intent to hold under this deed were necessary, it is found in his equivocal reply to

the demandant, when particularly interrogated to the point. *Hillings v. Bird,* 2 *East* 49.

WESTON J. delivered the opinion of the Court at the ensuing term in *Cumberland.*

Of the premises demanded, the tenant claims only that portion, which is covered by a part of the store. He deduces his title from *Nancy Ayer ;* and it is well made out, if the land described in the deed, dated *June* 14, 1800, made by *David Sewall* in behalf of the Commonwealth of Massachusetts to her, embraced this part of the premises. It was bounded twenty-four feet on the road, and extended north-westerly therefrom about thirty feet, where an old small dwelling house, improved or occupied by *Peter Page,* then stood. Whether that house stood upon the land conveyed, or whether it extended to that house, does not distinctly appear from the deed. In either case, the extent of the land would depend upon the location of the house. If it did not stand on the land, the house would be the terminating monument given ; if it did, the land would extend as far as the house did, in the direction from the road. In *March,* 1803, *Nancy Ayer* conveyed the same land to *George Tucker ;* " together," as the deed states, " with an old house standing on the premises, lately occupied by *Peter Page.*" From this deed it would seem, that the house stood on the premises, when she received her deed from the agent of the Commonwealth. The *Page* house has been since taken down or removed, and it is agreed that its site cannot now be rendered certain by the testimony of witnesses. It is therefore insisted by the counsel for the demandant, that the tenant must be restricted to the length of the line given from the road, in the deed under which he claims, which is about thirty feet. By the use of the term, " about," it may be understood that exact precision in the length of line was not intended ; but if the place where the monument stood, by which the length was controlled and determined, cannot be established, the tenant must be limited to the number of feet given, and the demandant is entitled to recover the excess, which is four feet and a half.

Cutts *v.* King

The law requires the best proof in the power of a party to produce ; and it will be sufficient, if of a nature to afford reasonable satisfaction to the mind. Monuments referred to in deeds are often perishable ; as trees, wooden buildings, or fences ; or slight and temporary ; as a stake, or a stake and a few loose stones, intended to be supplied by something of a more permanent character. They serve to point out at the time, to the parties in interest, the bounds of the land conveyed. After these monuments are gone, and such a period of time has elapsed, that no one can be found who remembers to have seen them, or can testify as to their location ; uniform continued occupancy, by buildings, fences, or other equivalent indications of ownership, is evidence that the land was located according to the original monuments. These monuments perish ; and time sweeps away those who could point out where they stood ; actual occupancy therefore, within the period of memory, is the only evidence which can be substituted. A prudent grantee causes posts or pillars of stone to be placed at the corners of his purchase, instead of the stakes referred to in his deed. When that generation is gone, no one can be brought to testify that they were rightfully placed ; yet if there has been a corresponding possession, no reasonable doubt can or ought to be entertained of this fact. Of the same character in principle is the evidence arising from fences and buildings. These deductions and inferences are fully justified and required by the general law of evidence ; and it is of great importance to the peace and quiet of the community, and to the security of titles, that they should be applied and sustained.

In 1803, it appears from the deed of *Nancy Ayer* to *George Tucker*, that the *Peter Page* house was still standing. The next year, when the site of that house could not have been mistaken, the store now owned by the tenant was built ; and it does not appear that from that time, the title of the tenant, or those under whom he claims, to the whole land covered by the store, has been questioned, until the commencement of this action. Upon this evidence, we are of opinion that the jury would have been warranted, and that it would have been their duty, to have regarded the tenant's occupancy to have been in conformity with the monuments in the deed to *Nancy Ayer*, under which the tenant holds.

Cutts *v.* King.

If the tenant's title to the part demanded under the store commenced by disseisin, it would be protected by the statute of limitations; but his case does not require the aid of that statute, and it is therefore unnecessary to give an opinion upon this point.

With regard to that part of the land for which this action is brought, which is not covered by the store, the tenant sets up no interest whatever in the moiety claimed by the demandant. It is insisted however that as the tenant has pleaded the general issue, and it appearing that he holds a part as tenant in common, the demandant is entitled to judgment. The demandant, having made out his title, would have had a right to a verdict and judgment under this plea, but for the statute of 1826, *ch.* 344. Prior to that statute the tenant, by the general issue, admitted himself to be in the seisin and possession of the land demanded. The statute expressly declares that this plea shall no longer have this effect. Before the new law, a judgment in favor of the tenant was, as between him and the demandant, evidence that he had title to the land demanded. Litigation between the parties was thus closed, and the party prevailing had a record title, which parties and privies to that judgment could not controvert, except in a higher species of action. Whether it was wise and expedient, by a change of the law, to render judgments in real actions less certain and effectual, it is not our business to inquire. A judgment for the tenant is not now necessarily evidence of title in him. He may have prevailed, because he was never in possession of the land demanded. It may be well in practice, whenever this is the case, that this fact should appear in the verdict. But if it does not, there must be some other mode, by averment and proof, to protect the demandant's title, where there has been no recovery against him upon the merits.

It is insisted by the counsel for the demandant, that the law of 1826 cannot apply to tenants in common; and that when a tenant in common is sued, he should by his plea set out his own proportion, defend as to that, and disclaim the residue. It may still be necessary and proper for him to do this, when the whole land is demanded. But when the action is brought for a proportion, which he does not claim, and which does not affect his own estate and interest, and

Cutts *v.* King.

he pleads the general issue, we cannot, consistently with the statute of 1826, hold him to have admitted himself by his plea to be in possession of the part or proportion of the land demanded. The demandant must be held to prove that the possession of the tenant is exclusive, or that he claims to exclude the demandant from the enjoyment of his proportion. Proof that the tenant is in possession of a proportion not demanded, and which is consistent with the demandant's claim, is not sufficient to maintain the action.

It remains to be determined whether such proof has been exhibited. The deed of *George Tucker* to the tenant, of *November* 1818, was merely a release. It does not appear that either party was in possession, or that the tenant claimed or exercised any act of ownership under it. The erection of a small piece of fence on one of the lines, was no invasion of the demandant's rights, nor is it evidence of exclusive possession. If one tenant in common in possession deny the right of a co-tenant, it may be evidence of ouster. What was said by the tenant to the demandant, cannot be so construed. It was a guarded reply to a question put by the demandant, having no tendency to affect or impair rights on either side.

It being the opinion of the court that the demandant is not entitled to recover, the verdict is set aside ; and according to the agreement of the parties, a verdict is to be entered for the tenant.